IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CT-3108-D

| | |
|---|---|
| CURTIS DEWITT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HARRY LAPPIN, et al., )<br>)<br>Defendants. ) | **ORDER** |

On June 18, 2009, Curtis DeWitt ("DeWitt" or "plaintiff"), a federal inmate incarcerated at the Federal Correctional Institution-Medium I in Butner, North Carolina ("FCC-Butner" or "Butner"), filed this action under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971) [D.E. 1]. DeWitt filed the action pro se, but is now represented by counsel [D.E. 12]. On May 4, 2010, the court reviewed the allegations of the complaint pursuant to 28 U.S.C. § 1915 and allowed the action to proceed [D.E. 2]. DeWitt sues Harry Lappin ("Lappin"), the Director of the Federal Bureau of Prisons ("BOP"); Newton Kendig ("Kendig"), the Assistant Director of the BOP managing the Health Services Division; Yvonne Phillips ("Phillips"), the Medical Designator for the BOP; Butner Warden Tracy W. Johns ("Johns"); Butner Health Services Administrator Jose Jimenez ("Jimenez"); and Butner Health Services Administrator Amy Jacobs ("Jacobs"). DeWitt complains that defendants acted with deliberate indifference to his serious medical needs and failed to provide adequate medical care during his incarceration at Butner.

On July 6, 2010, defendants filed a motion to dismiss or, in the alternative, for summary judgment [D.E. 7], along with a motion to seal exhibits [D.E. 10]. Because defendants attached

materials that are outside the scope of the pleadings, the court construes the motion as requesting summary judgment. See Fed. R. Civ. P. 12(d). Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified DeWitt about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 11]. On September 27, 2009, DeWitt responded in opposition and submitted an affidavit [D.E. 18]. For the reasons explained below, the court grants in part and denies in part defendants' motion for summary judgment, and denies defendants' motion to seal.

I.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted).

In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

2

In July 2008, DeWitt was incarcerated at FPC Yankton in South Dakota, and experienced blood in his urine. DeWitt Aff. ¶ 1. DeWitt reported it to staff at FPC Yankton, who in August and September 2008 performed an intravenous pyelogram and CT scan and found "a large right renal mass . . . with evidence of tumor extension into the right renal vein and vena cava." Mot. Summ. J., Exs. A-1, A-2; DeWitt Aff. ¶ 1. In September 2008, a urologist diagnosed DeWitt with renal cell carcinoma. DeWitt Aff. ¶ 2; Mot. Summ. J., Ex. A-3. "The urologist explained to [DeWitt] that he would require surgery to remove the kidney and perform a biopsy." Mot. Summ. J., Ex. A-3.

In September 2008, BOP transferred DeWitt to "Butner, which is the cancer treatment center for all of BOP." Mem. Supp. Mot. Summ. J. 1–2; see also DeWitt Aff. ¶ 3. However, the medical team at Butner could not perform the surgery, and the BOP sent DeWitt to a local hospital for treatment. Mot. Summ. J., Exs. A-5, A-7 to A-9. DeWitt received two MRI scans in October and December 2008, but surgery was not scheduled until April 2009. DeWitt Aff. ¶¶ 4–5; see also Mot. Summ. J., Ex. A-5 (April 15, 2009 BOP treatment note indicating surgery consult). Butner cancelled the April 2009 surgery.[1] Defendant Jimenez did not reschedule surgery until September 23, 2009, even though DeWitt's treating physician at Butner described the need for surgery as "urgent." DeWitt Aff. ¶¶ 6, 9; Mot. Summ. J., Exs. A-6 to A-12. DeWitt also has a hernia, and the surgeon who performed his September 2009 surgery anticipated repairing the hernia during the surgery. DeWitt Aff. ¶ 10; Mot. Summ. J., Ex. A-10. However, the surgeon told DeWitt that, because of the delay in surgery, the cancer had spread, lengthening the duration of the surgery. DeWitt Aff. ¶ 10.

---

[1] The parties disagree as to the reason Butner cancelled the surgery. Defendants state the cancellation was due to unspecified "security reasons." Mot. Summ. J., Ex. C-1 (BOP administrative remedy response). DeWitt states that he did not "take any actions which would have caused any type of security risk" and that "[u]pon information and belief, the day [he] was scheduled to be taken into surgery, a retirement party was scheduled for one of the prison personnel, and all of the scheduled surgeries were cancelled for that day." DeWitt Aff. ¶ 6. The court concludes that this issue of fact does not preclude entry of summary judgment.

3

As a result, the surgeon "did not have time to fix [DeWitt's] hernia because [DeWitt] had been under the anesthesia too long." Id. Although the medical records do not indicate that DeWitt received treatment for his hernia, DeWitt did receive a renal nephrectomy on September 23, 2009. Mot. Summ. J., Exs. A-12, A-13. DeWitt also has received regular CT scans to check for recurrence of cancer. Id., Exs. A-14, A-15.

II.

Defendants seek dismissal of any claim against them in their official capacities because such claims are not cognizable in a Bivens action. Mem. Supp. Mot. Summ. J. 5 (citing FDIC v. Meyer, 510 U.S. 471, 484–86 (1994); Randall v. United States, 95 F.3d 339, 345 (4th Cir. 1996)). DeWitt "concedes that a Bivens action lies only against federal officials in their individual capacities" and "respectfully requests that the Court make clear that any dismissal of this action against [d]efendants in their official capacities is without prejudice to [DeWitt's] right to bring an appropriate action under the Federal Tort Claims Act." Mem. Opp'n Mot. Summ. J. 4. Accordingly, the court dismisses the official capacity claims without prejudice.

Next, defendants seek dismissal on the basis that plaintiff attempts to assert claims against them in their supervisory capacities, which is not cognizable under Bivens. Mem. Supp. Mot. Summ. J. 5–6 (citing Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)). A civil rights action brought under Bivens may not be grounded upon a respondeat superior theory. See, e.g., Iqbal, 129 S. Ct. at 1948; Polk County v. Dodson, 454 U.S. 312, 325 (1981); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A supervisor may be held responsible for a subordinate's unconstitutional act only if he was involved personally or participated in the unconstitutional act. See, e.g., Rizzo v. Goode, 423 U.S. 362, 376–77 (1976). Thus, a plaintiff must show that (1) the supervisor "had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and

4

unreasonable risk of constitutional injury"; (2) the supervisor responded so inadequately "as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) there was "an affirmative causal link" between the inaction and plaintiff's alleged constitutional injury. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (quotations omitted) (discussing 42 U.S.C. § 1983).

DeWitt contends that "[t]he scope of [Iqbal] was limited to the national level Government-official defendants who were named in the suit. It did not affect the defendants at the local prison who were directly responsible for the constitutional violations allegedly committed against Iqbal." Mem. Opp'n Mot. Summ. J. 4. DeWitt contends he has shown that "[d]efendants Jacobs and Jimenez[2] had the direct responsibility for ensuring that [DeWitt] received the surgery he needed" and thus they are not subject to dismissal. Id. at 5.

DeWitt has alleged and presented evidence that Jimenez was directly involved in coordinating his surgery at an outside hospital. DeWitt Aff. ¶ 8; see also Mot. Summ. J., Ex. A-10 (BOP treatment note indicating that DeWitt's physician "was not involved in arranging the appt for UNC"). Jimenez has not refuted this assertion. As for defendant Jacobs, DeWitt has not submitted any evidence to support his allegation against Jacobs in opposition to the motion for summary judgment. Thus, the court concludes that dismissal of all defendants except Jimenez is appropriate.

Next, the court analyzes DeWitt's Eighth Amendment claim against Jimenez. In order to establish an Eighth Amendment claim for denial of medical care, a prisoner must establish "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A serious medical need is "one that has been diagnosed by a

---

[2]DeWitt makes no argument concerning defendants Lappin, Kendig, Johns, and Phillips. Thus, the court construes DeWitt's silence as a concession that his claim against these defendants should be dismissed.

5

physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quotation omitted).

Deliberate indifference requires that a defendant knew of and purposefully ignored "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. It is "obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley v. Albers, 475 U.S. 312, 319 (1986). Deliberate indifference "sets a particularly high bar to recovery." Iko, 535 F.3d at 241. "In order to establish a claim of deliberate indifference to a medical need, the need must be both apparent and serious, and the denial must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).

Jimenez does not dispute that cancer is "a serious medical condition requiring medical attention," but contends that DeWitt received adequate medical care. Mem. Supp. Mot. Summ. J. 8. The issue as to Jimenez, however, concerns why he failed to schedule DeWitt's surgery for over a year in the face of the doctor's instruction. Oddly, defendants failed to submit evidence concerning DeWitt's medical treatment between September 12, 2008, and April 15, 2009, and again between April 15, 2009, and June 11, 2009. The record does show, however, that on June 30, 2009, and July 2, 2009, DeWitt's treating physician characterized his need for surgery as "urgent," yet Jimenez did not schedule DeWitt for a surgical evaluation until August 15, 2009. Defendants have also failed to provide any evidence, such as an affidavit from a medical professional, to indicate that a delay of over a year in providing surgery to DeWitt did not cause DeWitt any significant harm or to contradict

6

DeWitt's assertion that he suffered pain and had additional medical complications as a result of the delay.

In Webb v. Hamidullah, the United States Court of Appeals for the Fourth Circuit noted that "a significant delay in the treatment of a serious medical condition may, in the proper circumstances, indicate an Eighth Amendment violation." 281 F. App'x 159, 166 (4th Cir. 2008) (per curiam) (unpublished). Webb had a hernia which could be repaired by "elective" surgery, but the surgery was not "urgent" and the inmate was never scheduled for surgery. Id. at 163–64. However, the inmate was treated with other measures, including a back brace, hernia belt, and pain medication. Id. The Fourth Circuit affirmed summary judgment for the defendant prison officials because the plaintiff had failed to "establish that the delay in his surgery caused him substantial harm." Id. at 167. The record before the Fourth Circuit included the inmate's entire medical record, as well as an affidavit from his treating physician regarding the propriety of his course of treatment. Id. at 163–64.

In Webb v. Driver, the Fourth Circuit remanded dismissal of a second case filed by the same inmate regarding treatment for his hernia. 313 F. App'x 591, 593 (4th Cir. 2008) (per curiam) (unpublished). The Fourth Circuit distinguished its prior holding on two grounds. First, for purposes of dismissal for failure to state a claim, Webb had now sufficiently "alleged that his pain is severe and that his hernia has grown larger due to the alleged delay in surgery." Id. at 593 n.*. Second, Webb had now alleged "that a doctor, examining him several years later . . . deemed surgery medically necessary." Id.

In light of the ambiguous record, the court denies the motion for summary judgment without prejudice as to the Eighth Amendment claim against defendant Jimenez. Jimenez may supplement the record and file another motion for summary judgment.

Next, Jimenez asserts the defense of qualified immunity. Qualified immunity is "'an

7

immunity from suit rather than a mere defense to liability[; and like an absolute immunity,] it is effectively lost if a case is erroneously permitted to go to trial.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Further, "[b]ecause qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992). The Fourth Circuit cautions that "[t]his does not mean, however, that summary judgment doctrine is to be skewed from its ordinary operation to give special substantive favor to the defense, important as may be its early establishment." Id. Defendant officials have the burden of pleading and proving qualified immunity. See, e.g., Cloaninger ex rel. Estate of Cloaninger v. McDevitt, 555 F.3d 324, 332 n.10 (4th Cir. 2009); Wilson v. Kittoe, 337 F.3d 392, 397 (4th Cir. 2003).

The court must ask two questions to determine whether qualified immunity applies. See, e.g., Pearson, 129 S. Ct. at 818; Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010); Unus v. Kane, 565 F.3d 103, 123 & n.24 (4th Cir. 2009); Miller v. Prince George's County, 475 F.3d 621, 626–27 (4th Cir. 2007). First, "whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right." Pearson, 129 S. Ct. at 815–16. Second, "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Id. Courts have discretion to decide which of the two prongs should be addressed first. Id. at 818. Thus, defendants are entitled to summary judgment on qualified immunity grounds if the answer to either question is "no." See, e.g., Miller, 475 F.3d at 627; Bostic v. Rodriguez, 667 F. Supp. 2d 591, 606 (E.D.N.C. 2009).

Jimenez focuses only on whether the facts alleged show that Jimenez's conduct violated the Eighth Amendment. See Mem. Supp. Mot. Summ. J. 9–10. Jimenez does not take issue with

8

whether the right at issue was "clearly established." See Bostic, 667 F. Supp. 2d at 606. Because the record is unclear on whether Jimenez's conduct violated the Eighth Amendment, Jimenez has not shown that he is entitled to qualified immunity. Accordingly, as with DeWitt's Eighth Amendment claim, the court denies summary judgment on this issue without prejudice.

Finally, the court addresses defendants' motion to seal. The court notes that the motion fails to comply with Section T of this district's CM/ECF Policy Manual, which requires that, unless "the filing party can cite a statute or rule (federal, local or standing order) that requires the filing to be sealed," the filing party must support the motion with a memorandum "that specifies: . . . how such request to seal overcomes the common law or the First Amendment presumption to access; . . . the specific qualities of the material at issue which justify sealing such material, taking into account the balance of competing interest in access; . . . the reasons why alternatives to sealing are inadequate; and . . . whether there is consent to the motion." CM/ECF Policy Manual, Section T (E.D.N.C. Jan. 25, 2010). Moreover, defendants filed the exhibits unsealed in addition to filing them under seal [D.E. 8-1, 9].

The court has analyzed the motion to seal under the governing standard. See, e.g., Va. Dep't of State Police v. Washington Post, 386 F.3d 567, 575 (4th Cir. 2004); Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988); In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988). Tellingly, DeWitt has not filed any response to the motion to seal, and did not object when defendants also filed the documents unsealed. Although the documents contain medical information about DeWitt that is not generally available to the public, the parties describe in detail DeWitt's health condition in unsealed filings. Thus, the court concludes that defendants have not met their burden on the motion to seal. Accordingly, the court denies the motion to seal.

III.

As explained above, the court GRANTS defendants' motion for summary judgment [D.E. 7] in part. Plaintiff's claims against defendants in their official capacities are DISMISSED WITHOUT PREJUDICE. Defendants Lappin, Kendig, Johns, Phillips, and Jacobs are DISMISSED. To the extent Jimenez seeks summary judgment, the court DENIES the motion [D.E. 7] WITHOUT PREJUDICE. The court DENIES defendants' motion to seal [D.E. 10].

SO ORDERED. This _8_ day of February 2011.

JAMES C. DEVER III
United States District Judge