IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CT-3108-D

| | | |
|---|---|---|
| CURTIS DEWITT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| HARRY LAPPIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On June 18, 2009, Curtis DeWitt ("DeWitt" or "plaintiff"), a federal inmate previously incarcerated at the Federal Correctional Institution-Medium I in Butner, North Carolina ("FCC-Butner" or "Butner"),[1] filed this action under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), complaining that defendants acted with deliberate indifference to his serious medical needs and failed to provide adequate medical care during his incarceration at Butner [D.E. 1]. DeWitt filed the action pro se, but is now represented by counsel [D.E. 12]. On May 4, 2010, the court reviewed the allegations of the complaint pursuant to 28 U.S.C. § 1915 and allowed the action to proceed [D.E. 2].

On February 8, 2011, the court granted in part defendants' motion to dismiss or for summary judgment and dismissed DeWitt's claims against defendants Lappin, Kendig, Johns, Phillips, and Jacobs, but denied summary judgment as to DeWitt's claim against Butner Health Services Administrator Jose Jimenez ("Jimenez") [D.E. 19]. On March 11, 2011, Jimenez filed an

---

[1] DeWitt is currently incarcerated at the United States Penitentiary in Leavenworth, Kansas. See BOP Inmate Locator, http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=IDSearch&needingMoreList=false&IDType=IRN&IDNumber=18012-047&x=65&y=11 (last visited Oct. 12, 2011).

unopposed motion to stay discovery [D.E. 21]. On March 21, 2011, Jimenez filed a renewed motion to dismiss or, in the alternative, for summary judgment [D.E. 22], and a memorandum in support and exhibits [D.E. 23–24]. Because Jimenez attached materials that are outside the scope of the pleadings, the court construes the motion as requesting summary judgment. See Fed. R. Civ. P. 12(d). DeWitt did respond in opposition to the motion for summary judgment, and the time within which to do so has expired. For the reasons explained below, the court grants the motion for summary judgment, and denies as moot the motion to stay discovery.

I.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted).

In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

2

The court set forth a more extensive recitation of the facts of this case in its prior order, and thus limits its discussion to issues pertaining to DeWitt's claim against Jimenez. In September 2008, a urologist diagnosed DeWitt with renal cell carcinoma which required surgery. Overton Decl. ¶ 5. On September 30, 2008, the Bureau of Prisons ("BOP") transferred DeWitt to Butner to receive further medical treatment. Id. ¶ 6; Jimenez Decl. ¶ 7. On October 3, 2008, a urologist examined DeWitt and ordered a CT scan of his abdomen, which medical staff performed on October 8, 2008. Overton Decl. ¶ 7; Jimenez Decl. ¶ 7.

Butner medical staff then attempted to perform a magnetic resonance imaging ("MRI") study of DeWitt's abdomen, but was unable to do so due to DeWitt's large physical size. Jimenez Decl. ¶ 8. Medical staff determined that the MRI "could not be performed at Butner or at the local community hospital[,]" and Jimenez "worked with [] DeWitt's medical team to find a site that could accommodate [] DeWitt's size and perform the MRI." Id. The MRI was performed on December 12, 2008, "[t]he first available appointment which could be obtained at a site that could accommodate [] DeWitt[.]" Id. ¶ 9. On February 3, 2009, a surgeon at the Duke University Medical Center ("DUMC") Urology Clinic examined Dewitt to evaluate his condition. Overton Decl. ¶ 14. The surgeon "required a new MRI to assess [] DeWitt's tumor's progression." Id. On March 27, 2009, a CT scan was performed, which revealed no evidence of distant metastic disease. Id. ¶ 17; Jimenez Decl. ¶ 9.

On March 27, 2009, DeWitt requested a transfer to the Federal Medical Center-Rochester, due to his frustration with the medical care he was receiving. Jimenez Decl. ¶ 10. On April 2, 2009, Jimenez responded to DeWitt's transfer request, noting his course of treatment and indicating that DeWitt was "scheduled for further evaluation of the renal mass in your right kidney." Jimenez Decl. ¶ 10 & Att. 1.

3

On April 15, 2009, DeWitt returned to the DUMC Urology Clinic, "and the plan was to schedule surgery to excise the renal mass . . . . On April 29, 2009, the surgery was cancelled." Overton Decl. ¶ 19; Jimenez Decl. ¶ 10 (stating the surgery was cancelled "due to correctional services issues that arose at the institution"). On June 24, 2009, DeWitt submitted an inmate request "in order to find out why his surgery had been cancelled." Jimenez Decl. ¶ 12. Jimenez "spoke with [DeWitt's] treatment providers regarding his case, and institution medical staff attempted to work with the original surgeon to reschedule the surgery, and when that was not possible, sought a new surgeon[,]" which delayed the rescheduling of DeWitt's surgery. Id. ¶¶ 12–13. "[W]hen it was clear that the original surgeon would not be performing Mr. Dewitt's surgery, [Jimenez] was involved in attempting to find a surgeon who may be able to perform the surgery . . . . The process took longer than expected due to the fact that the procedure to be performed was thought to be very complicated and needed to be performed by a specialized surgeon. The surgeon who performed the surgery in September 2009 was the only other specialist surgeon in the area that was available to perform this surgery." Id. ¶ 15. During this period, Butner medical staff regularly examined Dewitt and did not report that he was in any pain. See, e.g., Overton Decl. ¶¶ 13, 15–16, 18, 20–22.

As the Health Services Administrator for Butner, Jimenez "serve[s] as an advisor to the administration regarding overall administrative management and operation of health services and provides advice and recommendations regarding medical programming in consultation with the medical providers." Jimenez Decl. ¶¶ 2–3. Jimenez "work[s] in collaboration with the Clinical Director, manage[s] and direct[s] the activities of a multi-disciplinary team of health care professionals who are responsible for medical, dental, and allied health services . . . to the inmate population." Id. ¶ 3. Jimenez is not "involved in any clinical decisions regarding inmates' medical

4

treatment[,]" nor is he "responsible for the scheduling and/or approving of inmates' outside . . . medical appointments." Id. ¶¶ 4–5.

II.

To establish an Eighth Amendment claim for denial of medical care, a prisoner must establish "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quotation omitted).

Deliberate indifference requires that a defendant knew of and purposefully ignored "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. It is "obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley v. Albers, 475 U.S. 312, 319 (1986). Deliberate indifference "sets a particularly high bar to recovery." Iko, 535 F.3d at 241. "In order to establish a claim of deliberate indifference to a medical need, the need must be both apparent and serious, and the denial must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).

Jimenez has now submitted evidence demonstrating that he did not disregard DeWitt's medical condition or need for treatment. On the contrary, Jimenez responded to DeWitt's complaints and, despite the fact that he is not normally involved in such tasks, actively worked with DeWitt's medical team to arrange for appointments with specialized outside medical providers,

5

necessitated by DeWitt's physical size and medical condition. Moreover, DeWitt offers nothing in response to this evidence, and the time within which to do so has expired. Therefore, the court grants Jimenez's motion for summary judgment.

III.

As explained above, the court GRANTS defendant's motion for summary judgment [D.E. 22], and DENIES AS MOOT defendant's motion to stay discovery [D.E. 21]. The Clerk of Court is directed to close the case.

SO ORDERED. This 12 day of October 2011.

JAMES C. DEVER III
Chief United States District Judge